**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>　　　　　Plaintiff,<br><br>v.<br><br>STEPHEN SEMPREVIVO<br>　　　　　Defendant. | Cr. No. 1:19-cr-10117-IT-10 |

**DEFENDANT STEPHEN SEMPREVIVO'S AMENDED[1] RESPONSE TO THE GOVERNMENT'S MEMORANDUM REGARDING THE METHODOLOGY FOR CALCULATING GAIN OR LOSS UNDER THE SENTENCING GUIDELINES**

Defendant Stephen Semprevivo ("Mr. Semprevivo") respectfully responds to the *Government's memorandum Regarding the Methodology for Calculating Gain or Loss under the Sentencing Guidelines* (Document No. 420) (herein, "Loss Memorandum"). While Mr. Semprevivo has stipulated that "…the gain or loss from the offense of conviction is more than $250,000 but not more than $550,000" pursuant to USSG § 2B1.1(a)(1), Plea Agreement at 2 (Document No. 420), this stipulation as argued hereinbelow is not or was it expected to be binding on either Probation or the Court. As Defendant believes that Probation has appropriately calculated the Advisory Guideline range for the reasons below, he disagrees that the amounts set forth in the Government's Loss Memorandum are not in any way attributable to him as a loss, constitute a new theory of loss and should not be used to enhance his sentence.

In sum, the Government has waived its right to asset such additional losses at this late stage in these proceedings for failing to abide by this Court's Amended Procedural Order. *See* Document No. 400. Alternatively, the losses alleged are either non-existent or speculative – at

---

[1] Amended as to section 1, herein below, referencing adaptation from the Klapper Memorandum (Document No. 429) changing facts only as relates to Defendant Semprevivo.

1

best – and in no way constitute "pecuniary harm." Finally, the losses alleged are outside the scope of Mr. Semprevivo's wrongful conduct and includes similar conduct of others through Rick Singer, which was unknown to Defendant at the time of his own activities. Therefore these actions do not do not constitute relevant conduct under the Sentencing Guidelines. Therefore, this Court should disregard for all purposes – including whether to depart or vary from the Sentencing Guidelines – the Government's byzantine arguments in support of outlandish losses it failed to timely disclose to Mr. Semrepvivo.

1. **THE GOVERNMENT HAS WAIVED THE RIGHT TO INTRODUCE SUCH EVIDENCE AT THIS LATE DATE UNDER THE COURT'S AMENDED PROCEDURAL ORDER (Adapted from Klapper Memorandum changing facts only as relates to Defendant Semprevivo)**

As set down in Paragraph 2 of this Court's Amended Procedural Order of May 24, 2019 (Document No. 400 at 1), the Government was required to serve of defense counsel "*a copy of everything provided to the Probation Office*" "[n]ot later than seven days after the plea." Mr. Semprevivo pleaded guilty on May 7, 2019. *Id.* (Emphasis added). Thus, the Government had until May 14, 2019 to provide defense counsel with "a copy of everything provided to the Probation Office." The Government never disclosed any documents supporting the allegations of additional loss set for the in its Loss Memorandum.

Per Paragraph 3 of this Court's Amended Procedural Order (Document No. 400 at 2), also "[n]ot later than seven days after the plea or verdict the attorney for the government shall provide to the United States Probation Office a written statement setting for the names of the victims, their contact information/addresses, *and the amount of loss sustained by each victim/restitution owed to each victim* pursuant to the Federal Rules of Criminal Procedure, Rule 32(c)(1)(B)." (Emphasis added). While this disclosure appears to already have been made to the Probation

Office, *see* Loss Memorandum at 1, n.1 (Document No. 420 at 2), the same was never provided to defense counsel as required by Paragraph 2.

At no time has the Government sought leave of this Court to extend the disclosure deadline. *See* Amended Proc. Order at 4, ¶ 11 (Document No. 400) ("The schedule set forth in this Order may be modified by the Court for good cause shown.". Certainly, with regard to the victim loss statements, it is impossible for the Government to now establish good cause for failing to disclose the same to defense counsel where it already has provided such statements to the Probation Office.

For this Court to consider these arguments and materials now would extraordinarily and unfairly prejudice Mr. Semprevivo, especially given the nature and magnitude of the losses alleged.[2] Here, the Government is arguing that there are huge amounts of dollars in newly delineated losses. *See* Loss Memorandum suggesting a loss to Georgetown of up to $90,413); *id.* at 10 (lost application revenue to USC of up to 540,000 per year, and to Georgetown of approximately $361,000 in salaries paid to Coach Ernst. As an additional suggested measure of loss the Government suggests the costs of internal investigations conducted by Georgetown in 2017. Neither the Government, nor Georgetown in its Impact Letter provide a dollar amount for this investigation. However, even if they had, it would not be usable as a loss figure as to Defendant Semprivivo in this case. The investigation was unrelated to this Defendant. That investigation resulted from the attempted admission to Georgetown by a Caucasian female non Tennis playing client of Rick Singer, who had been represented to be an African American Tennis phenom. When that was uncovered, an internal investigation ensued, totally unrelated to

---

[1] It likewise is inappropriate and unfair the Government to reference "the final and draft Presentence Investigation Reports ("PSRs") prepared to date" in its filing. Loss Memorandum at 2. As the Court is well-aware, PSRs are confidential documents that may not be disclosed to third-parties absent a showing of special need. *See United State v. Connolly (In re Boston Herald, Inc.),* 321 F.3d 174, 188 (1st Cir.2003). This is so "even in the face of a *Brady* request for information from another defense's presence report." *Id.*

Defendant it is not relevant conduct. Even if it were so deemed, it was not reasonably foreseeable. In fact, the case cited on behalf of this theory by the Government, fails to sustain that exact point. In United States v Piggee, 303 F 3d 923 ( 8th Cir. 2002 ). In Piggee the only fact which made the cost of the investigation foreseeable was that that Defendant who was part of the industry knew that his actions if discovered would result in mandatory NCAA investigations.

Mr. Semprevivo's sentencing is scheduled to occur on September 26, 2019. For Defendant to now be required to investigate and potentially litigate the validity, let alone the relevance, of these claims is exceedingly unfair, especially where the Government has never remotely intimated that it would be raising such claims and where the Government never disclosed the documents on which such claims are based.

The Government should have disclosed these additional losses and any supporting evidence no later than May 14, 2019. Accordingly, the government has waived any right to introduce such new evidence of these alleged losses at this late date. Accordingly, this Court should disregard the same for all purposes including departures and variances.

## II. THE ALLEGED LOSSES ARE WHOLLY SPECULATIVE AND DO NOT CONSTITUTE PECUNIARY HARM

The Government argues that Georgetown suffered an actual financial loss as a result of the conduct engaged in by Defendant in this matter. However, Georgetown has no actual pecuniary loss as defined in the guidelines. The Government requests Probation to rely on the stipulation in the Plea Agreement as to the guideline computation to control.

As indicated hereinabove, this guideline stipulation is ineffective, not binding on Probation or the Court and the amount stipulated to by the Government and the Defendant represented monies paid by Defendant to Key Worldwide, a 501(c)(3) "charity" used by Rick Singer as a conduit to pay money to individuals in elite university athletic departments to

4

"purchase" athletic admission slots for his clients. One such slot was in fact used to assist the son of Defendant to gain admission to Georgetown. However, Georgetown lost no money or anything of value as a recognized pecuniary loss from the admission of Defendant's son. In fact, Georgetown received tuition payment for more than 2.5 years from Defendant on behalf of his son, in whatever amount Georgetown charged. Additionally, in response to Georgetown's fundraising requests, Defendant made substantial financial contributions directly to the school.

The stipulation referenced is an agreement between the Government and Defendant, it does not bind probation or the Court. Defendant and the Government both know that. A copy of Defendant's plea transcript is attached hereto, incorporated by reference herein and marked Exhibit A.

The following colloquy took place between the Defendant and the Court at page 12, line 5;

> "THE COURT: Do you understand that I'm not bound by your agreement [with the Government] and that I will not be able to determine you guideline sentence until after the Probation Office has prepared a pre-sentence report?
> THE DEFENDANT: Yes, your honor."

The fact that the agreement did not bind the Court or Probation was further emphatically emphasized by the Government at page 24, line 3;

> MR. ROSEN: Judge, respectfully, it's the same with the sentence. We're making a recommendation. I don't know what the -- what Probation, your honor, will calculate. It's the same with the fine. We're making recommendation…

The Government concedes as much in the cases cited in its Sentencing submission. In the case they cited United States v. Granik, 386 F 3d 404 ( 2nd Cir  2004 );

Although a Stipulation as to the amount of loss in a Plea agreement that is knowing and voluntary will generally govern the resolution of the issue, the stipulation

5

does not fix the amount as a matter of law…the Stipulation does not bind the sentencing Court, and that Court must find that loss amount as a fact at sentencing ….with the aid of the Pre-Sentence Report and determine the facts relevant to sentencing.

Therefore, clearly, relying on the stipulation to create a victim impact pecuniary loss is not appropriate.

### III. <u>ANY ALLEGED LOSS IS OUTSIDE THE SCOPE OF RELEVANT CONDUCT</u>

Mr. Semrepvivo pleaded guilty to a single count of conspiracy to commit wire fraud and honest services mail fraud pursuant to 18 U.S.C. § 1349. (Document No. 320 at 1). Sentencing for conspiracies are circumscribed by the rules governing jointly undertaken criminal activity, "A 'jointly undertaken criminal activity' is a criminal place, scheme, endeavor, or enterprise undertaken by the defendant concert with others. " USSG §1B1.3, comment. (n.3(A)). As the application note further explains:

> In the case of jointly undertaken criminal activity, subsection (a)(1)(B) provides that a defendant is accountable for the conduct (acts and omissions) of others that was:
>
> >  (i)  Within the **scope** of the jointly undertaken criminal activity;
> >  (ii) In **furtherance** of that criminal activity; and
> >  (iii) **Reasonably foreseeable** in connection with that criminal activity.
>
> The conduct of others that meets all three criteria set forth in subdivisions (i) through (iii) (i.e., "within the scope," "in furtherance," and "reasonably foreseeable") is relevant conduct under this provision. However, when the conduct of others does not meet any one of the criteria set forth in subdivisions (i) through (iii), the conduct is not relevant conduct under this provision.
>
> *See* USSG §1B1.3, comment. (n.3(A)) (emphasis added).

In United State v. Laboy, 351 F3d 578, 582-583 (1st Cir. 2003), the United State Court of Appeals for the First Circuit has explained the following:

> This type of liability ... has its limit: mere knowledge of another's activity is not enough to show liability under U.S.S.G. § IBI.3... ***The defendant is only***

> ***responsible for foreseeable conduct within the scope of his own explicit or implicit agreement.*** *See, e.g., United States v. Carrozza,* 4 F.3d 70, 76 (1st Cir. l 993)("So as to keep the criminal responsibility within bounds, § IB 1.3 requires sentencing courts to ascertain on an individual basis the scope of the criminal activity that the particular defendant agreed jointly to undertake."); *United States v. Innamorati,* 996 F.2d 456, 488-89 (1st Cir. 1993)("Each member of a drug conspiracy may be held accountable at sentencing for a different quantity of narcotics, depending on the circumstances of each defendant's involvement."). While a conspiracy charge may encompass all acts by co-conspirators in furtherance of the conspiracy, *see Pinkerton v. United States,* 328 U.S. 640, 647, 90 L. Ed. 1489, 66 S. Ct. 1180 (1946), ***"relevant conduct" is limited to the foreseeable acts resulting from the defendant's particular agreement. Thus, the scope of relevant conduct is "not necessarily the same as the scope of the entire conspiracy."*** U.S.S.G. § IBI.3, cmt. (n.2).
> (emphasis added).

Nowhere in his Plea Agreement nor in the Statement of Facts-both of which were drafted by the Government-is there even a hint of the losses the Government now alleges in its Loss Memorandum were in any way encompassed within the scope of Mr. Sempevivo's relevant conduct, let alone that they were foreseeable, or were caused by his offense conduct.

None of the facts Mr. Semprevivo otherwise has admitted, nor any evidence the Government has provided to date or argued in its Loss Memorandum, can even remotely establish the required causal nexus between Mrs. Semprevivo's relevant conduct and any of the alleged additional losses.

The Government's ultimate conclusion in its objections is where the objections completely fail. The Government writes; "The loss amount…, due to the substantial uncertainty [of it], the parties have stipulated that the loss or gain is equal to the full value of the bribe funds paid…"

The above statement is wholly incorrect. There was no agreement that the bribe payment was being used because a loss amount could not be ascertained. The plea agreement, attached hereto, incorporated by reference herein and marked Exhibit B states nothing at all about the bribe amount or a failure to calculate a monetary or pecuniary loss. The sole representation contained in the agreement is that the base offense agreed to was increased by 12 levels because the gain or loss was between 250,000 and 550,000. That estimate of the parties was always subject to probation and the Court calculating an accurate range which was done in the PSR. There was no statement or agreement tying it to the bribe amount.

Defendant, Steven Semprevivo, entered a plea to a one count violation of 18 U.S.C. 1349, Attempt and Conspiracy to Commit Mail Fraud. The Federal Sentencing Guidelines refers this violation to Guideline 2X1.1.

Following the provisions of Guidelines 2X1.1, the base offense level is that of the underlying offense, which would be a violation of 18 U.S.C. §1341, Frauds and Swindles. This statute corresponds to U.S.S.G. 2B1.1. It also directs by reference to 2C1.1, which is inapplicable in this case as it relates to offenses invoking public officials and violation of federal campaign election laws nor is 2B14.1 Commercial bribery applicable as the Probation office and the parties have recognized that 2B1.1 controls. As the Tennis coach at Georgetown is clearly not a public official, the guideline applicable is 2B1.1. As U.S.S.G. 2X1.1 continues after determining the base offense level, then adjustments from that guideline should be applied provided they can be "established with reasonable certainty."

Under 2B1.1, the base offense level is 7. Once this is established, the adjustments must be calculated. As indicated hereinabove, the Government has calculated a loss amount of at least $250,000.00 and less than $550,000.00. This, coupled with the base offense level of 7, provides a total offense level of 20, which, after acceptance of responsibility is subtracted, leaves a sentencing range of 24-30 as per the Plea Agreement. However, it is respectfully submitted these calculations are not accurate. This was determined by Probation.

The sole basis of the loss calculation by the Government is its attempt to use the $400,000.00 that Defendant Semprevivo paid to Rick Singer's 501(c)(3) charitable trust, which was then transferred in part to the Georgetown tennis coach. This attempt puns afoul of 2B1.1 assessment of loss and cannot serve as a basis under that guideline.

Loss in this case, however, must be calculated as set forth in Application Not 3 under 2B1.1. Loss under Section (b)(1), subsection A clearly states; "Subject to the exclusions in subdivision D, loss is the greater of actual loss or intended loss."

It is clear from the reading of the factual predicate for the plea, as well as the facts recounted in the PSR, that there was <u>no</u> reasonably calculable or actual dollar loss to anyone involved in this case. In the absence of an actual monetary loss, the application note refers to section 3(c), which permits an estimation of loss. Section C indicates the Court need only make a reasonable estimate of the loss.

In subsection C, the guidelines establishes the context for the Court to use in reaching a reasonable estimate. Applying each of these, it remains impossible to determine a monetary loss. These criteria are;

1. The fair market value of property taken, or the cost to the victim to replace that property.

In this case, no property was taken from any party. Georgetown lost nothing monetarily, as Defendant paid the University full tuition for every semester his son attended.

2. In the case of theft of proprietary information, the cost of developing that information; or its reduction in value.

This guideline is not applicable under any construction to the unique facts of this case.

3. The cost of repairs to damaged property.

This guideline is likewise not applicable.

4. The approximate number of victims multiplied by the average loss.

Again, this is inapplicable to the facts in this case.

5. The reduction in value to corporate assets or equity securities.

Again, totally inapplicable.

6. More general factors such as scope and duration and revenues generated by similar operations.

In this case, no revenues generated were from any victim and do not meet the definition of loss as defined in the guideline.

To put this in full context, whereas here, loss is defined as actual which is a reasonably foreseeable pecuniary harm to a victim or victims. Intended harm likewise is defined as pecuniary harm as well. Reference then to sub iii in the

application note makes it crystal clear; "Pecuniary harm means harm which is <u>monetary</u> or is otherwise <u>readily measurable in money</u>." (Emphasis ours)

In this matter, there is no pecuniary harm, and non-pecuniary harm such as loss of reputation are not quantifiable for guideline purposes. As a result, the methodology used hereinabove is the appropriate methodology to set loss. The payment of monies as done in this case violated the statute, but did not create a pecuniary loss which is the sole measure for adjustments under U.S.S.G. 2b1.1(b).

## IV. **EVEN ASSUMING ARGUENDO THAT THE GOVERNMENT'S NEW MEASURE OF DAMAGES IS COGNIZABLE, THEY DO NOT IMPACT THE GUIDELINES**

Even if this Court were to consider the Salary of Coach Ernst as a measure of damages, it would not impact the current Guideline calculation. Using the Governments figure of Coach Ernst's salary from 2012-2018 was approximately $361,000 Defendant Semprivivo is certainly not responsible for the lack of honest services for the years prior to his admission. As Defendants son was at Georgetown for at best 40% of Coach Ernst's tenure the gross salary figure for Defendant is approximately 144,400. As the Government concedes that Singer facilitated the admission of 10-12 students then Defendants pro rata share of the salary paid to Ernst which represented the honest services denied Georgetown based on the Governments suggestion of 10-25 % ) was 1,400 -2600 dollars neither figure would change the base offense level of 7 or 0-6 guideline range.

As we have no figure at all for the internal investigation, it cannot be counted. Nor does it overcome the fact that the 2017 investigation had nothing to do with

Defendant and as a result of that investigation no negative treatment was afforded Defendants son and Georgetown continued to accept tuition payments.

The Government, again without formula or figures, argues that Georgetown had to conduct an investigation of Ernst in 2017. Initially, the investigation of Ernst was totally unconnected with Defendant Semprevivo. The operative facts, which the Government neglects to disclose, are that in 2017, a guidance counselor at Buckley Preparatory School in Los Angeles became aware that one of her students, who was being privately counseled by Rick Singer, had submitted to Tulane an application claiming to be a competitive, stellar Tennis player. The guidance counselor became further aware that this female student held herself out to Tulane as an African American. The student was, in fact, Caucasian and not a competitive tennis player. The guidance counselor, Julie Taylor-Vis, was aware of other schools to which this student had applied. The counselor contacted these schools, including Georgetown, to inform all of them of the fraudulent application. It was solely as a result of this call, that Georgetown conducted its cursory investigation, and not as a result of anything involving the Defendant. Moreover, the investigation revealed that Gordon Ernst, the tennis coach, had used his preferred admissions slots for a number of other students who were not tennis players and who never played for Georgetown. Despite identifying these student in 2017 (after Defendant's son had been enrolled as a student for more than a year and would have been easily identified as a non-tennis playing recruit), no action was then taken against Defendant's son, or any other preferred admittee.

As indicated in the Government's objections, the only action taken by Georgetown in 2017 was to suspend Ernst and fire him in early 2018. Despite identifying students admitted through the preferred athletic slots, Georgetown took no action whatsoever, and merely continued to accept tuition payments, without any consequences to any student.

As far as the specific objection, other than suggesting that there was some pecuniary loss, the Government fails to delineate any such pecuniary loss in whole or in part to the Defendant. As was argued by the Government at the Plea, with regard to restitution (which is the present argument they are making as to pecuniary loss at page 25, line 10;

> "MR. ROSEN: The only restitution I can imagine at this time is <u>restitution related to legal fees which would be distributed amongst all the Defendants who participated in the criminal activity involving Georgetown.</u>"

As further indicated by the Government in its sentencing objection, the only legal fees relevant to this calculus would be those incurred in the initial 2017 investigation as the Government concedes in its letter of objection, attached hereto, incorporated by reference herein and marked Exhibit C. The Government's concession appears on page 2, where it states;

In addition, the victim universities have also incurred costs in investigating Defendant's fraud. <u>Although the guidelines exclude from the calculation of loss the cases of assisting the Government in its investigation.</u> Application Notes 3(D)(ii).

As indicated in the victim impact letter of Georgetown, it conducted 2 investigations. The first investigation was conducted in 2017 and was occasioned by the report of the high school guidance counselor, which resulted in a change in

Georgetown's policies regarding athletic preference admissions. The second investigation occurred in late 2018 and early 2019 when advised by the Government of the current investigation. Of particular import is that neither the parents nor the student who claimed to be an African-American tennis star, which started the initial investigation, were charged as defendants in these series of cases. As a result, the investigatory costs assumed by Georgetown would receive no contribution from them. A copy of the Georgetown Impact Statement is attached hereto, incorporated by reference herein and marked Exhibit D.

## V. **THE GOVERNMENT IS OBJECTIONS ARISE SOLELY BECAUSE THE PROBATION DEPARTMENT CALCULATES THE LOSS IN THIS CASE DIFFERENTLY FROM THE GOVERNMENT**

The Government disagrees with the Probation Office's position that it has failed to establish that Mr. Semprevivo's conduct caused pecuniary harm. Probation's assessment of Mr. Semprevivo's offending conduct happens to be more favorable for the defense, which apparently frustrates the Government. If there was no pecuniary harm, then this Court may not use the amounts Mr. Semprevivo paid as an alternative measure of harm. Rather than try to establish pecuniary harm that is reasonably and fairly consistent with the Plea Agreement and Statement of Facts, the Government embarks on a course in an attempt to have this Court to commit plain error. Probation has correctly found this case did no pecuniary harm; however, since the amount cannot reasonably be determined, the Government is urging the Court to utilize the $400,000 Mr. Semprevivo paid, or alternatively adopting new theories which do not fit, nor change the guidelines.

## **CONCLUSION**

For the reasons set forth above, Mr. Semprevivo respectfully requests that this Honorable Court order that the Government waived its right to allege additional losses asserted in its September 5, 2019 memorandum, and therefore, that said argument be disregarded for all purposes in the above-captioned action. Mr. Semprevivo respectfully reserves his right to further brief this Court on matters pertinent to her sentencing in accordance with this Court's Amended Scheduling Order.

Respectfully Submitted,

By his attorney,
*/s/ David Kenner*
David E. Kenner, Esq.
Bar Number: 41425

Kenner Law Firm
16633 Ventura Blvd., Suite 1212
Encino, CA 91436
Phone: (818) 995-1195
Fax: (818) 475-5369
Email: David@KennerLaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 10th day of September, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, and that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/ David Kenner*